**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALDRED NEAL,

      Plaintiff - Appellant,

    v.

D.F. LEWIS, Correctional Officer, El
Dorado Correctional Facility; D.
BRATTON, Unit Team Manager, El
Dorado Correctional Facility;
MICHAEL NELSON, Warden, El
Dorado Correctional Facility; K.
DUTTON, Sergeant, El Dorado
Correctional Facility; J. SPILKER,
Unit Team Manager, El Dorado
Correctional Facility; DON THOMAS,
Deputy Warden of Programs, El
Dorado Correctional Facility;
WILLIAM L. CUMMINGS, Secretary
of Corrections, in their individual and
personal capacities,

      Defendants - Appellees.

No. 04-3324

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-3434-JAR)**

---

Aldred Neal, Lansing, Kansas, Pro Se.

Ralph De Zago, Assistant Attorney General for the State of Kansas, Topeka,
Kansas, and Phill Kline, Attorney General for the State of Kansas, Office of the

Attorney General for the State of Kansas, Topeka, Kansas, for Defendants-Appellees.

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.[*]

**HENRY**, Circuit Judge.

Mr. Aldred Neal, a Shiite Muslim incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, filed a pro se 42 U.S.C. § 1983 complaint in federal district court alleging that prison officials interfered with his religious observances in violation of the First and Fourteenth Amendments. The district court granted summary judgment against him on all claims, and he appeals that determination. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

In its well-reasoned opinion, the district court detailed the facts, which it accepted as true because they were uncontroverted and found support in the record. *See Neal v. Lewis*, 325 F. Supp. 2d 1231 (D. Kan. 2004). We summarize them briefly here.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In January 1996, the Kansas Department of Corrections implemented a "Privileges and Incentives Level Program." The purpose of the program was to establish a comprehensive system of earnable offender privileges and provide an effective means of managing the offender population and reinforcing constructive behavior. Kansas Administrative Regulation 44-12-601(q)(1) provides that "all books, newspapers or periodicals shall be purchased through special purchase orders" by incarcerated inmates. Inmates may utilize special purchase orders for zero dollars to obtain free books.

The Kansas Department of Corrections has a number of internal management policy and procedures (IMPPs) concerning the operation and management of correctional facilities. These IMPPs mandate that a prisoner is allowed to keep in his or her cell a dictionary, a thesaurus, the primary religious text of his or her faith, and twelve other books chosen by the prisoner. The IMPPs also state that the primary text of Islamic religions is the Qur'an. If a prisoner violates these regulations, there are six separate methods for disposing of the offending property:

> (a) mailing the property to an address of the inmate's choosing at the inmate's expense or, with warden approval, at the facility's expense;
>
> (b) donating the property to a charitable organization;
>
> (c) having a person authorized by the warden pick up the property;
>
> (d) taking the property to a sponsor while on an approved furlough;

3

(e) delivering the property to an address in the locale of the facility, if approved by the warden; and

(f) removing the property by a means selected by the Warden if the inmate refuses to designate an approved means of removal.

*See* IMPP 12-120(IX)(B).

On September 27, 1999, Mr. Neal was in violation of IMPP 12-120 because he had more than twelve books in his cell. Defendant Lewis instructed Mr. Neal to choose the twelve books he wanted to keep in his cell and advised Mr. Neal that books in excess of the twelve-book limit would have to be removed from his cell. The same day, prison officials served Mr. Neal with a "request/authorization to remove personal property." This document listed the books that needed to be removed from the facility and asked Mr. Neal to determine the method of removal. Mr. Neal was offered two additional options in addition to the six options available under IMPP 12-120(IX)(B): he could donate the books to the prison or to the facility's chaplain. Both additional options would have allowed Mr. Neal access to the donated books.

Mr. Neal refused to designate his choice. Instead, he filed a grievance and an appeal concerning the excess books. After the appeal process ended in June 2000, he still refused to designate a location for the books. On December 22, 2000, more than fifteen months after the books were removed from his cell for the IMPP 12-120 violation, and more than six months after the administrative appeal

4

process was completed, the prison destroyed the books.

Mr. Neal filed a § 1983 complaint in federal district court alleging that the defendants (1) violated his right to practice his religion and receive religious materials, (2) denied him due process by failing to give him a pre-deprivation hearing prior to the seizure and destruction of his books, and (3) violated his equal protection rights by providing materials for faiths other than his but not for Shiite Muslims. The defendants moved for summary judgment and supported their motion with evidentiary materials. Despite two lengthy extensions of time, Mr. Neal failed to respond to defendants' summary judgment motion. The district court denied his third request for extension, and he finally filed an untimely response. The district court disregarded this response pursuant to its local rules because Mr. Neal had not made any showing of excusable neglect to justify his tardiness. *See* D. KAN. R. 7.4 (providing that a party's failure to file a timely response constitutes a waiver of the right to file a response, except upon a showing of excusable neglect).

The district court granted summary judgment in favor of the defendants on all claims. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court.

## II.    STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, viewing

5

the record in the light most favorable to the party opposing summary judgment. *See So. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139 (10th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). Because Mr. Neal is representing himself on appeal, we will construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Our review of the district court's holding that the individual defendants are entitled to qualified immunity differs from other summary judgment rulings. *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). Once a defendant raises a the defense of qualified immunity, "the burden shifts to the plaintiff . . . [to] satisf[y] a heavy two-part burden." *Id.* (quotation and citations omitted). First, the plaintiff must demonstrate that the defendant "violated a constitutional or statutory right." *Id.* (quotation omitted). Second, he must show "that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Id.* at 1156. If the plaintiff cannot make both showings, the defendant is entitled to qualified immunity. *Id.* If he can, the burden shifts to the defendant to "prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (quotation omitted).

Here, Mr. Neal's failure to timely respond to defendants' motion for

6

summary judgment does not, by itself, make summary judgment proper. His burden to respond arises only if the defendants have met their initial burden of production under Rule 56(c). *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented*." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (emphasis in *Reed*).

### III. ANALYSIS

We affirm the district court for substantially the same reasons set forth in its well-reasoned and thorough opinion. As the district court explained, Mr. Neal sued the defendants in their personal and individual capacities. However, his complaint also states that at least one defendant was "acting in his official capacity." *See* Rec. doc. 1, at 1-2 (complaint filed Oct. 25, 2001). We therefore interpret his allegations as directed at the defendants in both their official and individual capacities.

Mr. Neal's official capacity claims must fail, because state officials acting in their official capacities are not "persons" subject to liability under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

As to Mr. Neal's individual capacity claims, it is clear that the defendants did not violate his First Amendment rights simply by enforcing a prison

7

regulation limiting the number of books he could keep in his cell. As the district court noted, nothing prevented Mr. Neal from "stocking his cell with twelve religious texts in addition to the Qur'an." *Neal*, 325 F. Supp. 2d at 1236. Thus, the IMPPs at issue provided Mr. Neal with a reasonable opportunity to pursue his religion in light of the prison's legitimate administrative and penological objectives, including fire safety, institutional security, control of the source and flow of property within the prison, and the effective establishment of a behavior-incentive program.

Mr. Neal also suffered no due process violation. Defendants gave Mr. Neal eight distinct ways to comply with the IMPP; he failed to choose any of the myriad options available to him. He has no legitimate complaint about a lack of process arising from the prison's destruction of books fifteen months after giving him legitimate choices.

Finally, we agree with the district court that Mr. Neal has failed to meet his burden of proof with regard to his putative equal protection claim. All prisoners had the same right to fifteen total books in their cells, regardless of what religion, if any, they practiced. Mr. Neal fails to allege any way in which he was treated differently from others situated similarly to himself.

## IV. CONCLUSION

Accordingly, we **AFFIRM** the district court's opinion granting summary

8

judgment to the defendants.